UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAESAR D. COX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:12-cv-00125-MJD-TWP |
| ) | |
| MICHAEL J. ASTRUE Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Caesar Cox requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). The Court rules as follows:[1]

**I.     Procedural History**

Cox filed an application for DIB on August 27, 2010 and an application for SSI on August 31, 2010, alleging a disability onset date of June 30, 2010. Cox's applications were initially denied on November 18, 2010 and on reconsideration on March 3, 2011. Cox requested a hearing, which was held on July 25, 2011 before Administrative Law Judge Daniel Mages ("ALJ"). The ALJ denied Cox's applications on August 5, 2011. The Appeals Council denied

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

Cox's request for review on November 30, 2011, making the ALJ's decision the final decision for purposes of judicial review. Cox filed his Complaint with this Court on January 27, 2012.

## II.     Factual Background and Medical History[2]

Cox was 37 years old on the date of the alleged disability onset date. He is an alcoholic and has been for at least ten years.

Cox received a psychological evaluation from the State on October 5, 2010. He met with Nancy Ingwell, Ph.D who diagnosed him with alcohol dependence, post-traumatic stress disorder, social phobia, and polysubstance abuse. Dr. Ingwell assessed Cox with a Global Assessment of Function ("GAF") score of 55 and indicated that he had serious psychological symptoms.

On October 19, 2010, another State psychologist, Donna Unversaw, Ph.D, reviewed Cox's mental health records. She reported that Cox meets Listing 12.09 Substance Addiction Disorders. Dr. Unversaw also rated Cox's functional limitations under the "paragraph B" criteria of the Listings. She indicated that Cox had moderate restrictions of activities in daily living; marked restrictions in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Dr. Unversaw reported that the results of the mental status exam may not be an accurate portrayal of Cox's ability to function when he is sober, that alcohol is the primary limitation and factor in Cox's functional limits, and that Cox is able to perform simple repetitive tasks when not under the influence of alcohol. Kenneth Neville, Ph.D reviewed Cox's case file[3] on February 21, 2011 and affirmed Dr. Unversaw's assessment.

---

[2] Because Cox only disputes the ALJ's findings regarding his mental impairments, the facts are limited to the discussion of the mental impairments and will not discuss the physical impairments.
[3] The record does not indicate how complete the file reviewed by Dr. Neville was, i.e., whether the record included all of Cox's treatments up to and including February 21, 2011.

Cox was hospitalized at St. Vincent Stress Center from January 6, 2011 to January 11, 2011. He was brought in for alcohol detoxification and diagnosed with alcohol dependence and major depressive disorder. He was assessed with a GAF of 35 at the time of admission and 55 at discharge.

Cox was hospitalized again at St. Vincent from February 2, 2011 to February 10, 2011. His admission GAF was assessed at 35 and his discharge GAF was 45. He was diagnosed with alcohol dependence, depressive disorder, and dependent personality disorder. Cox had suicidal ideation upon admittance. Upon discharge, his insight and judgment were poor.

On February 22, 2011, Cox was hospitalized again at St. Vincent and remained there until March 2, 2011. His admission GAF was 20 and he had a discharge GAF of 55. He was diagnosed with alcohol dependence, depressive disorder, and personality disorder with dependent and antisocial traits. Cox attempted suicide two days prior to admission and also had homicidal ideations toward his brother.

Cox was hospitalized again from March 5, 2011 to March 9, 2011. His admission GAF was 35 and his discharge GAF was 65. He was diagnosed with major depression, alcohol dependence, and personality disorder. Cox again had homicidal ideation and a suggestion was made to refer him to the state hospital. This is the last mental health record submitted prior to the hearing.

### III.   Applicable Standard

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous

work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

If the ALJ determines that the claimant is disabled and there is medical evidence of a drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). Under the Social Security Act, "an individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C). To determine whether the alcoholism is a material factor, the ALJ must determine whether the claimant would still be disabled if he stopped using alcohol. 20 C.F.R. § 404.1535(b)(1). To make this determination, the ALJ must evaluate which of the current physical and mental limitations would remain if the

4

claimant stopped using alcohol and then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 404.1535(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then he is disabled independent of the alcoholism and the ALJ must find that the alcoholism is not a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(b)(2)(ii). If the ALJ determines that the remaining limitations are not disabling, then the ALJ must find that the alcoholism is a contributing factor material to the determination of disability, and, therefore, the claimant is not disabled. 20 C.F.R. § 404.1535(b)(i).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### IV.   The ALJ's Decision[4]

The ALJ first considered whether Cox would be disabled based on all of his impairments, including the substance use disorder. Applying the five-step analysis, the ALJ found at step one that Cox had not engaged in substantial gainful activity since the alleged onset date of June 30, 2010. At step two, the ALJ found that, since the alleged onset date, Cox had the following severe impairments: residual effects of multiple gunshot wounds, degenerative disc disease; hypertension; cardiomegaly; pancreatitis; a hernia; diabetes with neuropathy; depression; a personality disorder; and alcohol dependence.

At step three, the ALJ determined that Cox did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)). With regard to Cox's mental impairments, including the substance use disorder, the ALJ determined that Cox's mental impairments do not meet Listings 12.04, 12.08, or 12.09. In making this determination, the ALJ considered whether the "paragraph B" criteria were satisfied. In order to satisfy "paragraph B," there must be at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ found that Cox had moderate restriction in activities of daily living; moderate difficulties in social functioning; marked difficulties with regard to concentration, persistence or pace; and no episodes of decompensation.

The ALJ determined that, based on all of the impairments, including the substance use disorder, Cox does not retain the residual functional capacity ("RFC") to perform the mental

---

[4] Because Cox does not challenge the ALJ's findings regarding his physical impairments, the Court limits its discussion of the ALJ's decision to the mental impairments.

6

demands of unskilled work in an ordinary work setting on a regular and continuing basis, even at a sedentary level of exertion. The ALJ concluded that the RFC was due to the quantity and frequency of Cox's alcohol consumption.

At step four, the ALJ determined that Cox is unable to perform any of his past relevant work. At step five, the ALJ determined that, considering Cox's age, education, work experience, and RFC based on all of the impairments, including the substance use disorder, there were no jobs that existed in significant numbers in the national economy that Cox could perform. Therefore, the ALJ determined that a finding of "disabled" would be appropriate.

The ALJ next considered whether Cox would be disabled if he stopped the substance use. The ALJ determined at step two that, if Cox stopped the substance use, he would continue to have a severe impairment or combination of impairments. At step three, the ALJ determined that Cox would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ found that Cox would still have moderate restriction in activities of daily living and social functioning and no episodes of decompensation if he stopped the substance use. The ALJ previously determined that Cox would have marked difficulties with regard to concentration, persistence or pace when abusing alcohol; however, when not drinking, those difficulties were lessened. Therefore, the ALJ determined that Cox would only have moderate difficulties in this area. Since the ALJ did not find at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the ALJ found that the "paragraph B" criteria were not satisfied if Cox stopped the substance use.

Different from his earlier determination, the ALJ determined that, if Cox stopped the substance use, he would have the residual functional capacity to perform a range of sedentary

work. The ALJ defined this work as: sitting thirty minutes at one time and six hours during an eight-hour workday; standing and walking thirty minutes at one time and two hours during an eight-hour workday; lifting, carrying, pushing and pulling ten pounds occasionally and five pounds frequently, but frequent use of the non-dominant left upper extremity, and no operation of foot pedals or controls; occasionally climbing ramps and stairs, balancing, stopping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; no work around dangerous moving machinery or at unprotected heights; simple and repetitive tasks with the ability to attend, concentrate and persist for two hours at a time; and no more than superficial interaction with the general public, coworkers or supervisors.

At step four, the ALJ determined that, if Cox stopped the substance use, he would continue to be unable to perform any of his past relevant work. At step five, the ALJ determined that, if Cox stopped the substance use, considering his age, education, work experience and residual functional capacity, there would be a significant number of jobs in the national economy that Cox could perform. Finally, the ALJ determined that the substance use disorder is a contributing factor material to the determination of disability, because Cox would not be disabled if he stopped the substance use. Therefore, the ALJ determined that Cox was not disabled within the meaning of the Act.

## V.     Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's determination that Cox's substance use disorder is a contributing factor to Cox's mental impairments and, therefore, he is not disabled. Cox raises four arguments as to why this Court should reverse the decision of the ALJ: 1) substantial evidence does not support the ALJ's determination that Cox was not disabled as a result of his mental impairments, independent of his alcohol abuse; 2) the ALJ's failure to summon a medical expert to testify whether Cox's

impairments medically equaled a listed impairment requires reversal; 3) the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p; and 4) substantial evidence fails to support the ALJ's erroneous step five determination that Cox was not disabled because he could perform some jobs if he stopped the substance use.

### A. Substantial evidence does not support the ALJ's determination that Cox was not disabled, independent of his alcohol abuse.

Cox argues that the ALJ selectively reviewed the evidence and ignored the mental health treatment Cox received at St. Vincent Stress Center. The Court agrees. An ALJ "must consider all of the evidence and discuss significant evidence contrary to his ruling." *Smith v. Massanari*, 00C7652, 2002 WL 480955 (N.D. Ill. Mar. 25, 2002) (citing *Lauer v. Apfel,* 169 F.3d 489, 494 (7th Cir.1999)). The ALJ must explain his analysis with enough detail and clarity to allow for meaningful review. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ may not "select and discuss only that evidence that favors his ultimate conclusion." *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (quoting *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)).

Here, the ALJ appears to have only considered evidence that favored denial of Cox's disability applications. The ALJ almost completely ignored Cox's medical treatment for the entire year of 2011 leading up to the hearing. The ALJ discussed treatments in detail up to and including the psychological evaluation performed by Dr. Ingwell on October 5, 2010. There are only two references to any treatment since that evaluation: 1) when the ALJ determined that Cox had the severe impairments of depression, a personality disorder and alcohol dependence; and 2) when he noted that Cox "at times reported depression, anxiety, feeling worthless, difficulty sleeping and concentrating, suicidal and homicidal ideations, and hallucinations." [R. 17, 24.] The first reference does not list a citation, however, the second reference only cites to Cox's

hospitalization from January 6, 2011 to January 11, 2011. Cox was hospitalized and underwent mental treatment four times between January and April of 2011. In ignoring these treatments, the ALJ found that Cox "has no history of mental health treatment." [R. 24.] Yet the ALJ inconsistently found that Cox had the "severe impairments" of depression and personality disorder. The ALJ failed to discuss these impairments in relation to the four treatments which were almost exclusively for mental health treatments and alcohol dependence. Although the ALJ is not required to evaluate every piece of testimony and evidence submitted, he cannot ignore an entire line of evidence. *Briscoe ex rel. Taylor*, 425 F.3d at 355. The ALJ provided no reasoning as to why he failed to discuss the four hospitalizations dealing specifically with the mental health treatments.

Further, the ALJ deviated from the State psychologists' medical opinions without providing any explanation. The ALJ determined that Cox's mental impairments, including the substance use disorder, did not meet Listings 12.04, 12.08, and 12.09. However, he failed to discuss Dr. Unversaw's finding that Cox's mental impairments met Listing 12.09. The ALJ noted that in order to satisfy the "paragraph B" criteria of the listings, the impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Dr. Unversaw determined that Cox had marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace; thus, satisfying the "paragraph B" criteria. However, the ALJ only determined that Cox had moderate difficulties in social functioning, and thus only had one of the requirements under "paragraph B." The ALJ did not discuss any of Dr. Unversaw's assessment or Dr. Neville's affirmation of that assessment.

10

Because the ALJ failed to discuss his reasoning for departing from Dr. Unversaw's assessment, his subsequent determination, that Cox would still have moderate restriction in activities of daily living and social functioning if he stopped the substance use, is tainted. Here, the ALJ implies that if Cox stopped his substance use, then there would be no change in Cox's restrictions in social functioning, which conclusion is unsupported by medical evidence.

The ALJ also does not provide any medical support for determining that, if the substance use stopped, Cox would only have moderate difficulties in maintaining concentration, persistence, or pace. Medical support would be appropriate, especially considering Cox's four mental health hospitalizations in 2011. The ALJ based his decision on the fact that Cox "was able to follow the questioning and participate in the hearing" and that his mother reported that Cox was able to "concentrate, follow written and spoken instructions, perform household chores and shop when he is sober." Although Dr. Unversaw opined that alcohol is the primary limitation in Cox's functional limits, this opinion does not take into account the multiple mental health hospitalizations in 2011. The ALJ impermissibly played doctor here by interjecting his own medical judgment without relying on medical evidence. *Brennan-Kenyon v. Barnhart*, 252 F. Supp. 2d 681, 696 (N.D. Ill. 2003) (citing *Wilder v. Chater,* 64 F.3d 335, 337-38 (7th Cir.1995)).

Because the ALJ improperly ignored lines of evidence and played doctor in his determinations, a remand is required. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003); *Clifford*, 227 F.3d at 870.

> **B.     The ALJ's failure to seek an additional medical evaluation of the entire record after additional medical evidence was submitted was error.**

Next, Cox argues that the ALJ's failure to summon a medical advisor, i.e., a psychologist, to testify whether the claimant's combined impairments medically equaled a listed impairment requires reversal of the denial decision. While the Court does not agree that a medical

11

advisor/expert needed to testify, it was error for the ALJ not to obtain an updated medical expert opinion regarding the additional mental health treatments in 2011.

An ALJ may, but is not required to, seek the opinion of a medical expert to consider the nature and severity of the impairment(s) and whether the impairment(s) equal one of the listed impairments. 20 C.F.R. 416.927(e)(2)(iii). The opinions of the state agency medical consultants will suffice for purposes of determining medical equivalency. 20 C.F.R. 416.927(e). However, "the procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrative law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled." *Green v. Apfel,* 204 F.3d 780, 782 (7th Cir. 2000). The ALJ has a "duty to develop a full and fair record." *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir.2000). Where additional material medical evidence is received after the state agency has reviewed the evidence, the ALJ must obtain an updated medical opinion from a medical expert. *See Buckner v. Astrue,* 680 F. Supp. 2d 932, 940 (N.D. Ill. 2010); *Cirelli v. Astrue*, 751 F. Supp. 2d 991, 1004-05 (N.D. Ill. 2010).

As discussed above, the ALJ failed to consider Cox's entire medical history during the year 2011. The ALJ did not rely on any state physician's opinion when determining whether Cox's mental impairments medically equaled one of the listed impairments at step three. Besides inexplicably deviating from Dr. Unversaw's assessment, the assessment did not, and could not have, taken into account Cox's subsequent diagnosis of a personality disorder and the worsening of his depression. If the ALJ did consider Cox's 2011 medical history, he could not have given a proper determination of whether Cox's impairments medically equaled one of the listed impairments without first obtaining an updated medical expert opinion. This was needed to develop a full and fair record. Instead, failure to do so impermissibly allowed the ALJ to play

doctor in making his own determinations as to whether Cox's impairments medically equaled one of the listed impairments. *Clifford*, 227 F.3d at 870; *Green,* 204 F.3d at 781.

The parties also argued back and forth on the significance of Cox's admission and discharge GAF scores during the 2011 hospitalizations. Although the ALJ did not discuss Cox's GAF scores, a medical expert could have assisted in determining their significance. Because it was necessary for the ALJ to obtain an updated medical expert's opinion regarding the material medical evidence submitted in 2011, a remand is required to obtain such updated medical opinion.

### C.  The ALJ's credibility determination was erroneous under SSR 96-7p.

Cox next argues that the ALJ's credibility determination is patently erroneous because it is contrary to SSR 96-7p. The Court agrees. SSR 96-7p requires that an ALJ "consider the entire case record, including the objective medical evidence" when determining the credibility of the individual's statements. SSR 96-7p. As discussed above, the ALJ did not appear to consider the entire case record when determining whether Cox was disabled, and, thus, could not have made a proper credibility determination under SSR 96-7p. Therefore, a remand is required for the ALJ to make a proper credibility determination under SSR 96-7p.

### D.  Substantial evidence fails to support the ALJ's step five determination that Cox was not disabled.

Finally, Cox argues that substantial evidence fails to support the ALJ's erroneous step five determination that Cox was not disabled because he could perform some jobs if he stopped the substance use. As discussed above, substantial evidence does not support the step three determination of whether Cox's impairments medically equaled one of the listings. Thus, a

13

proper determination of step five could not have been made. Therefore, substantial evidence fails to support the ALJ's step five determination.

## VI.     Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED**.

Date:    12/20/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov